(Court of Appeal, Parish of Orleans).

## TITCHE & ROGERS vs. PEOPLE'S SAVINGS TRUST AND BANKING COMPANY.

Titche & Rogers and Jos. Carroll for appellant.

E. J. Meral for defendant and appellee.

DUFOUR, J.—The plaintiffs sued to recover $1,000 for legal services alleged to have been rendered by them to the defendant.

They aver that the defendant, through its president Collins, authorized one Joseph Levy to employ Mr. Titche to represent the Bank in certain matters to be hereinafter mentioned in detail. They additionally ask, should the employment be repudiated by the Bank, to be allowed on a **quantum meruit** to recover the value of meritorious services which inured to the benefit of the Bank.

The value of the services, if due, is not denied, but the fact of employment is, and the minutes of the Board of Directors show that no corporate resolution was ever

adopted authorizing the employment of Mr. Titche.

It is not disputed here that an attorney cannot recover from one who did not employ him, however valuable may be the result of his services to such person.

In fact, it often occurs that the valuable services of counsel inure to the benefit of others than those who have employed them.

5 An. 481; 8 An. 51; 11 An. 389; 27 An. 411; 33 An. 58; 119 La. 49.

But the present claim is that, though the defendant's Board of Directors did not by resolution employ or authorize the employment of counsel, the president of the Bank did employ him and, the Bank having knowingly accepted the benefit of the services, cannot now be heard to deny its liability for a proper compensation.

Whether the matter be viewed as one resting on an equitable estoppel, or on the theory of implied contract under Arts. 1781, 1811 and 1816 R. C. C., or on the codal maxim that no one should enrich himself at the expense of another, we think that there may arise cases where it would be gross fraud not to impose the burden where the benefits have been accepted.

The fact that an artificial person is concerned does not alter the situation, the principle is the same. The officers of a corporation bear the same relation to it that the agents of a natural person bear to their employer, hence, it is both plausible and just to hold that a corporation, by accepting benefits under a contract, made without the consent of its Board of Directors, acquiesces therein by implication and ratifies it.

No hardship can result from the enforcement of this doctrine.

Where such an unauthorized contract is as yet executory, the corporation may protect itself against its execu-

tion, and where it has been executed, the court will protect the corporation by restricting the compensation to an amount fairly commensurate with the benefits received.

But a doctrine, equitable in its origin, should be equitably applied, therefore, before a corporation can be held liable, it must appear that the services were primarily rendered to it and that the benefits received were not the incidental results of services rendered to another.

In the light of the principles of law just stated, we may now proceed to the discussion of the facts upon which this controversy hinges.

When, about the year 1906, the Leon L. Schwartz Co., a local business house failed, its assets were purchased by its largest creditors, the State National Bank, and the Peoples Bank.

They organized a new corporation to carry on the same business under the name of the "Ferd Kaufman Co. Ltd., and respectively took $25,000 and $15,000 worth of the capital stock thereof.

After the new concern had begun business with Joseph Levy as director, representing the State National Bank, Orloff Lake as director, representing the Peoples Bank, and Ferd. Kaufman as director and president at a salary of $5,000 a year, it was financed by the State National Bank, which advanced the sum of $43,000.

In December, 1907, the State Bank went into liquidation and this made necessary the adjustment of its financial connection with the Kaufman Co.

It was at this point that Mr. Titche undertook the negotiations which formed the basis of this suit.

As the final result of his efforts, the State Bank surrendered its $25,000 worth of stock in the Kaufman Co., the $43,000, which it had loaned to it in cash and its alleged claim of $18,000 for the debt due by the Schwartz

Co., which had apparently been charged against the Kaufman Co.

As a consideration, the State Bank received in full acquittance of all these claims $30,000 in cash.

This sum was made up of $10,000 put up by Levy and Kaufman and $20,000 loaned them by the Peoples Bank, which, at the same time sold them all of its $25,000 worth of stock in the Kaufman Co.

This, together with the deal made with the State Bank, transferred the full ownership of the Kaufman Co., to Levy and Kaufman, and the People's Bank became a creditor merely.

The question is, at whose employment and for whose benefit did Mr. Titche perform the services described?

That Mr. Titche believed that he was employed by Collins, through Levy, to represent the People's Bank does not admit of doubt; our appreciation of his high character is such as to make his statement to that effect conclusive.

But nowhere do we understand him to claim more than that Levy told him that Collins had authorized the employment for the Bank, nor does it appear that Collins originally dealt directly with Titche or subsequently admitted the employment.

He is a gentleman of high standing in local business circles he most positively denies that he ever authorized Levy to employ an attorney for the Bank, which already had its regular attorney.

In endeavoring to fathom the motives of Levy and to appreciate his testimony at its proper value, we may well bear in mind that he admits having tried to "save the People's Bank" and "get ahead of the State National Bank," although at that very time he was the accredited representative of the State National Bank on the Board of Directors of the Kaufman Co.

It is unfortunate that Mr. Ferd Kaufman was not ex-

amined as a witness; his personal connection with a per-sonal interest in the transaction would doubtless have enabled him to shed light on the points in controversy.

It clearly appears that Kaufman employed Titche before Levy had with Collins the interview to which he testifies.

At that time Kaufman was receiving a salary of $5,000 a year for a term of years. The company bore his name and both he and Levy, as his brother-in-law, were interested in preventing any business disaster which might result from any attempt on the part of the State Bank liquidators to forcibly close the business.

The preservation of his credit and the saving of his name from connection with a business failure were at stake and were most probably the motives which led to the opening of the negotiations with the State Bank.

Then was evolved the further results of a reorganization of the company with Kaufman and Levy as sole owners by purchase of the People's Bank stock, after the elimination of the State Bank.

In this connection it must be borne in mind that from the date of the establishment of the Kaufman Co. by the two Banks, August 3, 1906, Kaufman held an option, good until 1910, to buy from them the entire stock of the Kaufman Co.

It is evident that Mr. Titche represented, according to his own view, both Kaufman and the Bank; a letter from Kaufman in the record and Mr. Titche's own statement show that it was Kaufman's avowed intention to pay half of the fee.

Moreover, at the latter stage of the proceedings conflict arose as to the old Schwartz claim and the interests of the Kaufman Co. and the Bank became antagonistic.

It was the former's aim to pay as little as possible and the latter's to exact as much as possible.

True to his sense of propriety and professional ethics,

Mr. Titche requested the Bank to call in its attorney, Mr. Meral, when this particular matter was under discussion; none the less, however, does it indicate who the real client was, and whose interest was primarily taken.

In order to avoid the appearance of competition in bidding the People's Bank withdrew, and this gave Mr. Titche the appearance of acting under a common employment in bidding in the State Bank's interest. But it is abundantly shown that during that time, Collins and Lake, in Collins' absence, consulted with Mr. Meral, their regular attorney, and never considered Mr. Titche as their attorney.

The record is voluminous and we have studied it with great care, we have avoided rehearsing the evidence in detail and mentioned only the salient features.

Without giving undue importance to apparent inaccuracies, loose language and isolated expressions, and taking the testimony as a whole, we have reached the conclusion that the services were primarily rendered to Kaufman and Levy, and that the main purpose sought was the purchase, in their interests, of the Kaufman Co.

The benefit which inured to the People's Bank of retiring from the business and finding a purchaser at a fair price, was merely an incidental result for which it cannot be made to pay.

Judgment affirmed.

January 10, 1910.

Rehearing refused February 21, 1910.